UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| WILLIAM D. GARRETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:05-cv-116-WGH-DFH |
| ) | |
| CITY OF EVANSVILLE, ) | |
| ) | |
| Defendant. ) | |

## MAGISTRATE JUDGE'S SECOND ORDER ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge[1], on Defendant City of Evansville's Motion for Summary Judgment filed January 30, 2008. (Docket Nos. 67-68). Plaintiff filed his response on April 3, 2008. (Docket Nos. 81-84). Defendant's reply brief was filed on July 29, 2008. (Docket Nos. 105-106). The Magistrate Judge conducted oral argument on November 4, 2008. Plaintiff was present in person and represented by counsel, Darlene Carole Robinson. Defendant was represented by counsel, Joseph H. Harrison, Jr., and Robert W. Rock.

Plaintiff brought his claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, alleging discrimination based on race. Plaintiff's Amended Complaint also alleges an

---

[1]Defendant consented to Magistrate Judge jurisdiction in this case on November 21, 2005; Plaintiff followed with consent on December 5, 2005. (Docket Nos. 33, 36). District Judge David Frank Hamilton entered an Order of Reference on December 8, 2005. (Docket No. 37).

equal protection claim under 42 U.S.C. § 1983.  Defendant moved for summary judgment arguing that Plaintiff has failed to demonstrate facts sufficient to support any of his claims.  In his response, the Plaintiff has informed the court that he has abandoned his equal protection claim.  By prior order (Docket No. 118), the court denied the motion as to the Plaintiff's retaliation claim.  Therefore, the court's remaining task is to determine if the Plaintiff's race discrimination claim survives summary judgment.

**I.     Legal Standard**

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The motion should be granted so long as no rational fact finder could return a verdict in favor of the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  Thus, a court's ruling on a motion for summary judgment is akin to that of a directed verdict, as the question essentially for the court in both is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.  When ruling on the motion, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences therefrom in that party's favor.  *Id.* at 255.  If the nonmoving party bears the burden of proof on an issue at trial, that party "must

set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see also Silk v. City of Chicago,* 194 F.3d 788, 798 (7th Cir. 1999). Lastly, the moving party need not positively disprove the nonmovant's case; rather, it may prevail by establishing the lack of evidentiary support for that case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

## II. Analysis

Under Title VII, a plaintiff attempting to demonstrate discrimination may do so by showing direct or indirect evidence of discrimination. *Vakharia v. Swedish Covenant Hosp.,* 190 F.3d 799, 806 (7th Cir. 1999). Direct evidence of discrimination is "evidence which can be interpreted as an acknowledgment of the defendant's discriminatory intent." *Ezell v. Potter,* 400 F.3d 1041, 1051 (7th Cir. 2005).

Because the Plaintiff has failed to point to any direct evidence of discrimination, the court must search for indirect evidence of discrimination by examining Plaintiff's claim using the burden-shifting method set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, an employee must first establish a prima facie case of discrimination. *Pafford v. Herman,* 148 F.3d 658, 665 (7th Cir. 1998). Once the employee has carried his burden of demonstrating a prima facie case, there is a presumption of discrimination, and the burden shifts to the employer who must articulate a legitimate, nondiscriminatory reason for the action. *Id.* If the employer provides such a reason, the burden then shifts back to the employee to

prove that the employer's stated reason is a mere pretext.[2]  *Vakharia,* 190 F.3d at 806-07.

In order to demonstrate a prima facie case of discrimination, a plaintiff must show that:  (1) he belongs to a protected class; (2) he performed his job satisfactorily; (3) he suffered a materially adverse employment action; and (4) his employer treated similarly situated employees outside the protected class more favorably.  *Lenoir v. Roll Coater, Inc.,* 13 F.3d 1130, 1132 (7th Cir. 1994).  Failure to establish any of these four elements defeats a discrimination claim.  *Bio v. Federal Express Corp.,* 424 F.3d 593, 596 (7th Cir. 2005).

In this case, Plaintiff is an African American, and he was terminated, so he has met his burden of proving the first and third prongs of his prima facie case.  At issue is whether the Plaintiff has demonstrated that he was performing his job to the legitimate expectations of his employer, the City of Evansville, and whether the Plaintiff can establish that his employer treated similarly situated employees outside the protected class more favorably.

There is considerable evidence of record that the Plaintiff was not performing his job to the satisfaction of his supervisor, George Fithian.[3]  On August 4, 2000, the Plaintiff was counseled, in writing, concerning improving his

---

[2]In this instance, the Seventh Circuit has determined that pretext means a phony reason for the employer's actions.  *See Jackson v. E.J. Brach Corp.,* 176 F.3d 971, 983 (7th Cir. 1999).

[3]Defendant has alleged that Fithian was the Plaintiff's supervisor who was responsible for his termination, and the Plaintiff does not suggest that someone other than Fithian made the decision to terminate him.

interpersonal relationships and communications with the public and customers of the C.K. Newsome Center (the "Center"). (Affidavit of George Fithian ("Fithian Aff.") ¶ 6; Affidavit of Robin Hayes ("Hayes Aff.") ¶ 6). On December 18, 2000, the Plaintiff was counseled, in writing, to prepare weekly reports for his supervisor and keep his supervisor informed regarding personnel matters. (Deposition of William Garrett ("Garrett Dep.") at 113-14; Fithian Aff. ¶ 6, Ex. B). On January 8, 2001, the Plaintiff was counseled, in writing, regarding fundraising, reports to his supervisors, and personnel matters. (Fithian Aff. ¶ 6, Ex. C). On March 23, 2001, the Plaintiff was verbally reprimanded by former Mayor Lloyd. (Garrett Dep. at 72-80; Deposition of George Fithian ("Fithian Dep.") at 39-43; Fithian Aff. ¶ 6, Ex. D). On February 25, 2004, the Plaintiff was counseled, in writing, for arguing with a subordinate in public. (Garrett Dep. at 157-59; Fithian Aff. ¶ 6, Ex. G).

On May 7, 2004, the Plaintiff was counseled, in writing, for failing to conduct himself in a professional manner and warned that any future instance of inappropriate behavior would result in his termination. (Garrett Dep. at 148, 151-53; Fithian Dep. at 35-36, 43-44; Deposition of Gail Riecken ("Riecken Dep.") at 7; Deposition of Robin Hayes ("Hayes Dep.") at 51; Fithian Aff. ¶ 6, Ex. H). In the May 7 letter, Gail Riecken ("Riecken") warned the Plaintiff of reports of two incidents where the Plaintiff was alleged to have treated patrons of the Center inappropriately. (Fithian Aff. at Ex. H). Riecken informed the Plaintiff that this was not the first time that he was involved in an incident, that the

behavior would not be tolerated, and that he must attend counseling in lieu of termination. (*Id.*) On June 14, 2004, as a result of the May incident, Fithian sent the Plaintiff a letter warning him that "any further display of rude, unprofessional, [or] inappropriate behavior by you while performing your duties as Community Center director will result in your termination." (Fithian Aff. ¶ 6, Ex. I; Hayes Aff. ¶ 6).

On May 6, 2005, the Plaintiff was suspended, without pay (Garrett Dep. at 242-44; Fithian Aff. ¶ 6, Ex. K), and on May 24, 2005, the Plaintiff was terminated (Garrett Dep. at 147, 222, 244-46; Fithian Aff. ¶¶ 4, 6, Ex. L). Plaintiff was alleged to have been involved in an incident with a patron, Nicole Wolfolk, that Fithian believed resulted in Wolfolk's termination by her employer. (Affidavit of Nicole Wolfolk at Exs. K, L).

In an attempt to show that the Plaintiff was meeting the City's legitimate performance expectations, the Plaintiff has come forward with evidence in the form of his own Affidavit and deposition testimony, the Affidavits of Dorothy Adams and Marsha Lynch-Duncan, and portions of the depositions of Harold Calloway, Michael Madriaga, Robin Hayes, Gail Riecken, George Fithian, Roosevelt Bailey, and Angela Judge.

The Affidavit of Dorothy Adams seeks to affirm the truth of information contained in a prior letter written to Plaintiff's counsel in May 2005. The letter contains Adams' understanding of events that occurred at a CVS store involving her daughter, who worked at the Center. Adams was not present at the CVS

store when these events took place.  The letter indicates that Adams did contact some employees at the Center about her concern for her daughter's safety while the daughter was at work.  It is unclear if she communicated her concerns for her daughter's safety directly to the Plaintiff, or if those concerns were described to another employee with the intent that they be relayed to the Plaintiff.

The Affidavit of Marsha Lynch-Duncan establishes that Garrett worked professionally when she dealt with him in her role as President of the Black Women's Task Force while that group used the Center.

Harold Calloway's deposition testimony indicates that he believes that under the Plaintiff's tenure, the facility was kept clean, was frequently used, and was properly administered.

The deposition testimony of Robin Hayes indicates that the Plaintiff performed the duties of his position adequately during his tenure.  Hayes' testimony is that the only deficiencies noted were in the Plaintiff's personal work relationships and on some occasions with failing to provide proper paperwork.

Michael Madriaga's deposition testimony indicates that during Madriaga's tenure as Executive Director of the Center, the Plaintiff received only one disciplinary action notice.  However, that disciplinary action notice was later withdrawn.

The Magistrate Judge has reviewed the depositions of Gail Riecken, Roosevelt Bailey, and Angela Judge and find that they have minimal materiality

to the question of whether the Plaintiff was performing his job to the legitimate expectations of the Defendant.

The Plaintiff's own deposition testimony and Affidavit establish that he had obtained donations and improved the equipment used at the Center; kept it clean; increased its use and the revenue generated from the Center; and alleges his own perception that only one complaint among thousands of patrons had been registered concerning his professionalism.  His Affidavit establishes that he perceived that he was subjected to greater scrutiny than others with respect to his work performance, and that certain requests for his programs and funding were denied.  He further alleges that he was unnecessarily sent to an employee assistance program counselor when no other employees were sent for that purpose.

Although the Affidavit of Lynch-Duncan and the deposition testimony of Calloway show that there were some patrons of the Center who believed that the Plaintiff was performing his job properly, and although the Plaintiff's own perception was that he was performing his job properly, these pieces of evidence may not be relevant to the issue of whether the Plaintiff was performing to the legitimate expectations *of the decision maker, George Fithian,* in this case.  It is the perception of the decision maker, not the employee, that is relevant to the second prong of the *McDonnell Douglas* test.  *Adreani v. First Colonial Bankshares Corp.,* 154 F.3d 389 (7th Cir. 1998).  As in *Adreani,* the record before this court makes it clear that the City articulated reasons for discharging the Plaintiff that

were not forbidden by law.  Specifically, Fithian believed that because a number of instances of perceived rude, unprofessional, or inappropriate behavior had occurred, Fithian believed that the Plaintiff was not the "face of the City of Evansville" who would provide the optimum atmosphere which the City wished to establish at the Center.  While Fithian's opinion might not be held by Calloway, Lynch-Duncan, or even the court itself, there has been an insufficient showing that Fithian's beliefs were not honest beliefs.  It must be remembered that this court does not sit as a super personnel board reviewing business decisions.  *Guerrero v. Ashcroft,* 253 F.3d 309, 314 (7th Cir. 2001).  This court must conclude that the Plaintiff was not performing his functions sufficiently to meet Fithian's honestly-held legitimate expectations.

Even should this court conclude that the evidence tendered by the Plaintiff is sufficient to establish that he was performing the job to the legitimate expectations of the City, the fourth prong of the *McDonnell Douglas* test must be considered.  Under that prong, the Plaintiff must establish that persons outside the protected class were treated more favorably than the Plaintiff.  The evidence before this court does not demonstrate that Caucasian individuals were treated more favorably.  In this case, there are four possible comparators to the Plaintiff who worked in similar capacities as facility managers and who were supervised by Fithian.  Of those four, only Kathy Hutter received any sort of disciplinary action or write-up during her tenure.  That incident was not comparable to the number of prior "write-ups" or disciplinary sanctions in the Plaintiff's employee

file prior to the final decision to terminate him. Plaintiff has not brought forward evidence that satisfies the fourth prong of the prima facie case required to establish discrimination through indirect evidence.

Finally, even if this court could find that the Plaintiff has established the prima facie case of discrimination, the Defendant has come forward with what it claims to be a legitimate non-discriminatory reason for its decision to terminate the Plaintiff. Specifically, Fithian has established that he believed that the Plaintiff had – over a number of years – engaged in activities which were unprofessional. He was counseled concerning "interpersonal relationships," "communications with the public and customers" of the Center, and arguing with a subordinate in public. While these incidents can be viewed as only a small portion of the job, they establish the basis for Fithian's honest belief that the Plaintiff was not the person who should be "the face of the City of Evansville" at the Center. In order to ultimately prevail on his claim, the Plaintiff must show that Fithian's belief was not an honest one, and that the articulated reason for his termination is merely a pretext for discrimination. The evidence tendered and described above does not establish that the City's articulated reason for termination was false or pretextual.

### III. Conclusion

Therefore, the Defendant's Motion for Summary Judgement is **GRANTED, in part,** as to the Plaintiff's Amended Complaint that he was terminated because of a racially discriminatory motive. As previously established in this court's

order of November 18, 2008, this case does remain for trial to determine whether the City's actions with respect to the Plaintiff – while not proven to be racially discriminatory – may have been taken in retaliation for his exercise of protected activity when he had a legitimate belief that he had raised issues of discrimination before the employer.

The current trial setting of May 26, 2009, is **CONFIRMED.** The final pretrial conference previously set for February 11, 2009, is hereby **RESCHEDULED** for **WEDNESDAY, MAY 13, 2008,** at 1:30 p.m., Evansville time (CDT), before the Magistrate Judge in Room 328, Federal Building, Evansville, Indiana. All attorneys must be present in person for this conference. Clients with authority to settle this case are to be available in person or by telephone at the time of this conference. The parties shall comply with the final pretrial preparation deadlines outlined in their Case Management Plan.

**SO ORDERED.**

**Dated:** January 26, 2009

_____
WILLIAM G. HUSSMANN, JR.
Magistrate Judge

**Electronic copies to:**

Darlene Carole Robinson
ROBINSON & ASSOCIATES
office@olearylaw.net

Joseph H. Harrison Jr.
BOWERS HARRISON, LLP
jhj@bowersharrison.com

David L. Jones
BOWERS HARRISON LLP
dlj@bowersharrison.com

Robert W. Rock
BOWERS HARRISON LLP
rwr@bowersharrison.com

Arthur D. Rutkowski
BOWERS HARRISON, LLP
adr@bowersharrison.com